FREDERIC WRIGHT et al., Respondents, *v.* STEPHEN CABOT et al., Appellants.

The rule that a third person may deal with an agent as principal, who holds himself out as such, concealing his agency, and not disclosing its origin, and that the real principal cannot so assert his rights as to cut off equities which have grown up between such third person and the agent, has

no application when the former knew, or had sufficient information to fairly create an inference of the existence of the agency, and to put him upon inquiry, although the name of the principal was not disclosed.

Where, therefore, plaintiffs consigned certain merchandise to the firm of E. & C. S. for sale, which firm employed defendants as brokers to and they did make the sale, with knowledge that E. & C. S. were not the sole owners of the goods, or under circumstances sufficient to put them upon inquiry, *held,* that an application of a portion of the proceeds of the sale in payment of a prior indebtedness of E. & C. S. to them, was unauthorized, and that plaintiffs were entitled to recover the same.

Soon after the proceeds of sale came into defendants' hands, an attachment was served upon them, issued in an action brought by other creditors of E. & C. S. against them. No portion of the proceeds was taken under the attachment. But, after defendants had been fully notified of plaintiffs' claim, they were examined in supplementary proceedings, after judgment in said action, and testified that they owed E. & C. S. the balance of the proceeds of such sale, concealing the claim and ownership of plaintiffs. An order was made that they pay over such balance to the sheriff, which they did. *Held,* that such payment was no defense, as defendants had it in their power, by stating the facts, to prevent the making of the order, and it was their duty so to have done; having omitted this duty without reason or excuse, their payment was, in effect, voluntary.

One of plaintiffs and one of the firm of E. & C. S. were asked as witnesses and were allowed to answer, under objections and exceptions, what plaintiffs' business relations with that firm were. The answers were to the effect that the goods were shipped to said firm, to be sold for account of plaintiffs. *Held,* that even if any one of the inquiries was too broad in its terms, as the answers were confined to the precise issues, there was no error.

On cross-examination of one of the plaintiffs, whose testimony was taken by commission, he was requested to annex copies of any correspondence with E. & C. S. He annexed extracts from and not the whole of the letters. On the trial plaintiffs read these extracts under objection and exception. *Held* no error; that while defendants were entitled to the whole of the letters, their remedy was by motion in advance of the trial either to have the execution of the commission corrected by annexing the full letters or striking out the extracts, or to suppress the deposition; and not having taken that remedy they must be held to have assented to the mode in which the commission was executed.

Where there has been an opportunity to correct an imperfect execution of a commission, either by ordering a re-execution or quashing the return, no objections because of such imperfect execution will be heard on the trial.

(Argued June 19, 1882; decided October 10, 1882.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of plaintiffs, entered upon an order made March 10, 1881, which overruled defendants' exceptions and directed judgment on a verdict directed by the court. (Reported below, 15 J. & S. 229.)

This action was brought to recover the proceeds of the sale of a quantity of " Esparto grass " belonging to plaintiffs, who were doing business at Liverpool, England, which was consigned by them to the firm of E. & C. Stokes at Philadelphia, for sale on their account. That firm employed defendants, who were brokers doing business in New York, to make a sale; this they did and received the proceeds.

The further material facts are stated in the opinion.

*F. R. Coudert* for appellants. Plaintiffs are estopped because they allowed the Stokes to seem to be entitled to the proceeds, and thereby induced defendants to look to the proceeds in their hands for payment of the balance due from the Stokes and to refrain from taking other steps to protect themselves. (*Voorhis* v. *Olmstead,* 66 N. Y. 117; *Read* v. *Jaudon,* 35 How. Pr. 303 ; Story on Agency, §§ 386, 390, 420; *Mitchell* v. *Bristol,* 10 Wend. 495 ; *Tainter* v. *Prendergast,* 3 Hill, 72; Biglow on Estoppel, 468 ; *McNeil* v. *Tenth Nat. Bk.,* 46 N. Y. 325, 329.) Defendants were bound to give the certificate to the sheriff. (Code of Civil Procedure, § 650.) All they were bound to do was to notify their principals, the Stokes, at once. (*Bilven* v. *H. R. R. R. Co.,* 36 N. Y. 403, 407 ; *Holmes* v. *Remsen,* 4 Johns. Ch. 460 ; *S. C.,* 20 Johns. 229 ; *Donovan* v. *Hunt,* 7 Abb. Pr. 29; *Cook* v. *Holt,* 48 N. Y. 275 ; *Gibson* v. *Haggerty,* 37 id. 555 ; *U. S. Trust Co.* v. *Wiley,* 41 Barb. 479.) The court erred in admitting testimony as to the business relations between the plaintiffs and E. & C. Stokes, under the defendants' objection to its relevancy. (1 Greenleaf on Evidence, § 52 ; *Townsend Manuf. Co.* v. *Foster,* 51 Barb. 346, 352 ; 41 N. Y. 620 ; *Clark* v. *Vorce,* 19 Wend. 232 ; *Underhill* v. *N. Y. & H. R. R. Co.,* 21 Barb. 489 ; *Worrall* v. *Parmelee,* 1 N. Y. 519 ; *Wilson* v. *Wilson,* 4

Keyes, 413 ; *Baird* v. *Gillett*, 47 N. Y. 186, 187 ; *Anderson* v. *R. W. & O. R. R. Co.*, 54 id. 334 ; *Havermeyer* v. *Havermeyer*, 11 J. & S. 506.) The extracts from letters, annexed to the deposition of the plaintiff Wright, were incompetent, and were improperly admitted under that objection. ( *Walbridge* v. *Kilpatrick*, 9 Hun, 135 ; *Sizer* v. *Burt*, 4 Denio, 426 ; *Dennis* v. *Barber*, 6 S. & R. 620, 625 ; *Taylor* v. *Reggs*, 1 Peters, 591 ; 1 Greenleaf on Evidence, § 82 ; Cowen & Hill's note ; 1 Phillips on Evidence, 602.)

*Geo. H. Fletcher* for respondents. If the commission had not been properly executed, it was the defendants' duty to have it corrected before going to trial. A motion for return and execution was the proper and necessary method of raising the point. (2 Wait's Pr. 704 ; *Zellweger* v. *Caffe*, 5 Duer, 87, 100 ; *Sheldon* v. *Wood*, 2 Bosw. 267; affirmed, 24 N. Y. 607 ; *Bk. of Penn.* v. *Union Bk. of N. Y.*, 11 id. 205 ; *Burrill* v. *Watertown Bk. & Loan Co.*, 51 Barb. 106.) Under the Factors' Act defendants could get no relief, for their charges against Stokes were all antecedent debts, not incurred on the faith or credit of these goods or moneys of plaintiffs, then in their hands. (4 Edmonds' Stat., chap. 179, p. 461, §§ 3, 4.) Whenever any third person claims an interest in property sought to be summarily transferred in supplementary proceedings, no order for the delivery can be made therein. (*Rodman* v. *Henry*, 17 N. Y. 482 ; *Sherwood* v. *R. R. Co.*, 12 How. 136 ; *Grassmuck* v. *Richards*, 2 Abb. N. C. 359 ; *Manice* v. *Smith*, 5 N. Y. Weekly Dig. 255; *Edmondson* v. *McLoud*, 16 N. Y. 544 ; *Corning* v. *Tooker*, 5 How. 19.) Although a person having possession of property about the time of a levy be ignorant of an assignment, if, prior to any payment by him to the sheriff, he has notice of the assignment, attachment proceedings are no defense to him in an action brought by the assignee against him. (*Greentree* v. *Rosenstock*, 61 N. Y. 593 ; *Gibson* v. *Haggerty*, 37 id. 557, 560 ; *Lenear* v. *Woods*, 7 N. Y. Weekly Dig. 341.) The agency of the Messrs. Stokes was revoked by their bankruptcy. (Story on Agency, § 486 ; 2 Kent's Comm. [4th

ed.], § 41, p. 645; Story on Bailments, 211; *Audenried* v. *Betteley*, 8 Allen, 202; *Hudson* v. *Granger*, 5 B. & Ad. 27, 31, 32.) Their principals and sub-agents, the defendants, were placed merely in the same attitude as if their authority had been revoked by death. (*Audenried* v. *Betteley*, 8 Allen, 302; *Jackson Ins. Co.* v. *Partee, Admr.*, etc., 9 Heisk. [Tenn.] 296; *Lehigh Coal Co.* v. *Mohr*, 83 Penn. St. 228.)

Finch, J. The evidence renders it entirely certain that the Esparto grass sold by the defendants, and for the proceeds of which they are sued, was the sole property of the plaintiffs, consigned by them to E. & C. Stokes as agents for its sale, who were bound to remit to their principals the whole proceeds, after deducting commissions and expenses. The defendants, therefore, have applied the property of plaintiffs to pay the debts of E. & C. Stokes, and are here to defend that application. They invoke for that purpose the general rule that third persons may deal with one as principal who holds himself out as such, concealing his agency and not disclosing its origin; and that the real principal cannot so assert his rights as to cut off the equities which have grown up between such agent and third persons. (Wharton on Agency, § 465; Story on Agency, § 390.) This rule has its source and its justification in the broader doctrine that where one of two innocent parties must suffer, he shall bear the loss whose act made its occurrence possible. But neither the rule nor its reason can apply where the third person knows or has sufficient information to fairly infer the existence of an actual agency, although the name of the principal be not disclosed. (*Hogan* v. *Shorb*, 24 Wend. 462; *Maanss* v. *Henderson*, 1 East, 335; *Bliss* v. *Bliss*, 7 Bosw. 345.) And the same result follows where, without actual knowledge of the agency, the circumstances are such as fairly to put the third person on inquiry. (*Baring* v. *Corrie*, 2 Barn. & Ald. 137.) Most of the cases referred to were those in which the third person was a purchaser, and distinctions are drawn, not necessary to be here considered, between cases in which the supposed principal was a factor, having possession of the goods,

and those in which he was a mere broker, negotiating without such possession. Omitting any notice of these, and of other distinctions, it is sufficient, for the purposes of the present inquiry, to say that no form of the rule invoked by the defendants can justify their defense, if it is apparent that they knew or had good reason to know that E. & C. Stokes were not in fact the principals, or the sole owners of the property sold. We are thus brought to consider the facts proved on the trial.

It was in August, 1877, that Stokes first spoke to the defendants about the shipment of goods which afterward occurred. The defendants were then engaged to sell the property as brokers, but nothing was said indicating its ownership. On the 8th of the same month, Stokes wrote the defendants announcing that a sample shipment had been ordered, and adding, " we have first-class correspondents who work with us on joint account. " Again they wrote on the 5th of September speaking of advices from " our friends abroad," and adding, " they request us to introduce it in as quiet a manner as possible." On the 13th of October, Stokes wrote as to an advertisement of the grass and said, " we propose to send a copy to our correspondents in Europe, and consult them about putting an annual advertisement in." On the 21st of January, the defendants sold the goods, and eight or ten days later collected the price. On the 5th of February, Stokes again wrote to the defendants, complaining of their neglect to account, and saying " the goods were not ours, being on consignment, and we have so informed you frequently." No reply of the defendants, denying this statement, nor any contradiction of it on the witness stand was given. We must take it, therefore, as true. After all this information, and on the 11th of February, the defendants render an account in which they apply $550 upon an old debt due them from E. & C. Stokes, contracted we know not when, but under an agreement made nearly six years before, and charging expenses and commissions, acknowledge a balance of a little over $600. This sum they call in their answer the " net proceeds " of the sale. They plead no offset or counter-claim against E. & C. Stokes, nor any payment by a credit given,

but say only that such balance was the "net proceeds." On this state of facts we think no defense was established as to the $550 withheld. The defendants knew or had good reason to know that E. & C. Stokes were not the sole owners of the goods, that others were interested, and even that the foreign correspondents were the probable owners and E. & C. Stokes merely consignees and agents. Beyond any doubt the facts and circumstances were strong enough to put the defendants on inquiry, and deprive them of any equity founded on a belief that E. & C. Stokes were the real and the sole principals with whom they were dealing. They must stand in a different attitude before they can use plaintiffs' property to pay Stokes' debt to them.

As to the balance, admitted by the defendants to have been in their hands, the defense relied on is that it was taken from them by compulsory process of law. The firm of Ralli Bros., who were creditors of E. and C. Stokes, sued out an attachment against them which was served on the defendants very soon after the proceeds of sales came to their hands. Those proceeds were never taken under the attachment. In April, 1878, the defendants were notified by an agent of the plaintiffs of the claim of the latter to the goods consigned to Stokes. At some time in the summer of the same year, the agent exhibited his power of attorney and claimed the property as belonging to the plaintiffs. And yet, in August of that year, the defendants examined in supplementary proceedings after judgment, obtained by Ralli Bros., testified that they owed E. & C. Stokes the balance in question, concealed the claim of ownership of plaintiffs, in that way suffered an order to be made that they pay it over to the sheriff, and thereupon paid it accordingly. The defendants had it in their power, by stating the facts of the case, to prevent the order from being made. (*Rodman* v. *Henry*, 17 N. Y. 482; *Edmonston* v. *McLoud*, 16 id. 544; *Locke* v. *Mabbett*, 2 Keyes, 457; *Teller* v. *Randall*, 26 How. Pr. 155.) It was their duty to have done so, and omitting it, without reason or excuse, their after payment to the sheriff was, in effect, voluntary and not compulsory.

Such payment was no defense. (*Greentree* v. *Rosenstock*, 61 N. Y. 593.) As in that case, so in this, the defendants took it upon themselves to decide who was really entitled to the money, and must bear the consequences of their mistake.

Two exceptions to the admission of evidence remain to be considered.

One of the plaintiffs, examined on commission, was asked what their business relations with E. & C. Stokes were, and Stokes was asked under what arrangement he received the goods. Both questions were objected to as irrelevant. The answers showed that the goods were shipped to the firm of E. & C. Stokes, to be sold for account of plaintiffs. The evidence was, therefore, relevant. It was proper and necessary to establish the exact relation of each of the parties to the goods in controversy. If one of the inquiries was somewhat broad in its terms the answer was confined to the precise issues involved.

In the cross-examination of one of the plaintiffs whose evidence was taken on commission, he was requested by the defendants to annex copies of any correspondence with E. & C. Stokes. The witness annexed extracts from the letters and not the whole of the same. On the trial the plaintiffs read these extracts under an objection and exception. Undoubtedly the defendants were entitled to have had the whole of the letters and not extracts, but if they so desired, their remedy was by motion in advance of the trial to have the error in the execution of the commission corrected, either by annexing the full letters, or striking out the extracts, or suppressing the deposition. Not having taken that remedy they must be held to have assented to the mode in which the commission was executed. (*Com. Bank of Penn.* v. *Union Bk.*, 11 N. Y. 205 ; *Sturm* v. *Atlantic Mut. Ins. Co.*, 63 id. 87 ; *Zellweger* v. *Caffe*, 5 Duer, 100; *Union Bank of Sandusky* v. *Torrey*, 2 Abb. Pr. Cas. 269 ; *Sheldon* v. *Wood*, 2 Bosw. 267.)

In the case last cited the Superior Court, in which the present action was tried, established the rule, formally, that where opportunity had existed to correct an imperfect execution of a commission, either by ordering a re-execution or quashing the

return, no objections to the deposition would be heard on the trial, save those addressed to the competency of the witness, or the admissibility of evidence. The rule is reasonable and just. Here, the defect was in the execution of the commission. Letters were asked to be annexed, and the commissioner annexed extracts, instead of requiring complete copies. They could have been obtained before the trial. On a motion, the commission could have been sent back for that purpose. Such motion not having been made, the plaintiffs had a right to assume that the cross-examiner was contented with what he had obtained. And, besides, it is difficult to see how the admission of the extracts worked any possible harm. They proved nothing except what had already been proved and was nowhere contradicted, that the plaintiffs were the sole owners of the goods.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.